## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|                              |   |                            |
|------------------------------|---|----------------------------|
|                              | : |                            |
| KENYA BROWN,                 | : |                            |
|     Plaintiff, | : |                      |
|                              | : |                            |
|     v.   | : | CASE NO. 3:17-cv-53 (SRU)  |
|                              | : |                            |
| RICHARD P. BENOIT, et al.,   | : |                            |
|     Defendants. | : |                     |
|                              | : |                            |

## INITIAL REVIEW ORDER

Plaintiff Kenya Brown, currently confined at Cheshire Correctional Institution in Cheshire, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983, alleging that the defendants have been deliberately indifferent to his dental needs and challenging the constitutionality of Administrative Directive 8.4 which governs dental services. Brown names as defendants Dentists Richard P. Benoit and Bruce Lichtenstein. The complaint was filed on January 12, 2017. Brown's motion to proceed *in forma pauperis* was granted on January 17, 2017.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not

sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.    <u>Allegations</u>

Dr. Lichtenstein has been providing dental care for Brown since August 2008. At that time, Dr. Lichtenstein became aware that tooth #19 needed repair. Dr. Lichtenstein did not provide corrective measures to halt further decay of the tooth. In April 2010, it was again documented that tooth #19 had deep decay and had fractured. At that time, Dr. Deflorio put Brown on a list for a filing, but did not follow up to ensure that treatment was provided. In July 2010, Dr. Cuevas attempted a restoration of tooth #19. He was unsuccessful because the fracture required more time than had been allotted.

In September 2010, Brown notified the dental department of pain in tooth #20. He told Dr. Cuevas that he experienced extreme discomfort with hot or cold temperatures. Brown alleges that his mistreatment was result of informal policies in effect between 2010 and 2013 in the dental departments at Northern Correctional Institution, Garner Correctional Institution, and MacDougal Correctional Institution that prioritized extraction over prevention or restoration services. As a result of these policies, at an unspecified time, Dr. McGeoghan broke a tooth that

did not require removal.

In September 2012, Brown was subjected to inadequate dental procedures by Dr. Reichler. Brown suffers from a dental complication, known to defendants Benoit and Lichtenstien, whereby he has difficulty achieving pain relief from local anesthesia. While attempting to extract tooth #22, Dr. Reichler spent over an hour repeatedly breaking off pieces of the tooth to the gum line. Dr. Reichler then left Brown with the nerve exposed for over seven days.

In July 2013, Dr. Tuttle agreed to try to restore a tooth. She gave Brown multiple injections to try to numb the area. The injections were unsuccessful. Dr. Tuttle drilled a hole directly through Brown's tooth leaving the nerve exposed. When Brown refused any further treatment, Dr. Tuttle allegedly made false sexual allegations against him. That incident is the subject of another lawsuit, *Brown v. Tuttle*, 3:13cv1444 (VAB). Dr. Benoit did not discipline Dr. Tuttle for making the false charges. Brown experienced severe dental pain until the tooth was finally extracted in August 2013.

Brown alleges that Dr. Benoit was aware of his difficulty achieving pain relief from local anesthesia but did not arrange for alternatives such as cleanings to prevent decay. Dr. Benoit permitted Dr. Tessler to treat Brown, requiring him to wait unreasonable times for treatment and denying him pain medication. As a result of Dr. Tessler's actions, Brown lost three back teeth, ##30, 31, and 32, as a result of infection.

On October 23, 2015, Dr. Lichtenstein attempted to restore teeth ## 19 and 20. He did so only after the Attorney General's Office intervened. He had great difficulty restoring tooth #19 because seven years had passed since the decay was first noted. The filling became dislodged

and fell out. Dr. Lichtenstein filled the tooth a second time on October 29, 2015. Tooth #20

required a second restoration procedure on December 18, 2015.

On January 15, 2016, Dr. Lichtenstein noted further decay in tooth #19 but did not restore

the tooth or order cleaning. Dr. Lichtenstein faxed his report to Dr. Benoit the same day. Dr.

Benoit did not recommend restoration or cleaning.

Between February 24, 2016, and April 22, 2016, Brown was fitted for partial dentures

and the dentures were manufactured. Brown received one set of partial dentures on April 22,

2016. On May 19, 2016, Brown committed an act of self-harm and was admitted to the infirmary

at Corrigan Correctional Institution. Correctional Officer Murphy packed Brown's property.

Brown believed that that his partial dentures were destroyed or thrown away and informed the

AAG Varunes, who had been involved in obtaining the partial dentures, of his beliefs.

On May 31, 2016, Brown was transferred. During intake, Brown told the nurse that his

partial dentures were missing and that he needed to see the dental department. He also wrote to

the dental department. Dr. Lichtenstein should have known that Brown would suffer pain and

discomfort and experience difficulty eating without the partial dentures, but did not respond to

Brown's complaint. After waiting for a response from Dr. Lichtenstein for three months,[1] Brown

filed a grievance. On July 1, 2016, Brown wrote to the dental unit and stated that his filling had

fallen out and that he had been writing to the dental unit since June 26, 2016. On July 5, 2016,

Dr. Lichtenstein indicated that Brown was on the list for dental services. On August 5, 2016,

---

[1] Although Brown alleges that he did not receive any response for three months, he attaches to his complaint a copy of a June 9, 2016 Inmate Request to which Dr. Lichtenstein responded and noted that Brown was scheduled for a dental visit on June 13, 2016, ECF No. 1-1 at 62, and a second request dated July 1, 2016, to which Dr. Lichtenstein responded that Brown had an appointment to have his tooth fixed on July 2 or 12, 2016, ECF No. 1-

Brown submitted a grievance addressing his dental needs. On August 11, 2016, Dr. Lichtenstein responded and stated that he served 1400 inmates by himself, had not had an assistant for three months, and that there was a 4–5 month delay in dental services.

Brown's appeal was denied by Dr. Lichtenstein on August 23, 2016. Pursuant to Administrative Directive 8.9, the doctor who was the subject of the grievance is permitted to rule on the grievance. Brown views this rule as discriminatory and a denial of due process. Brown alleges that Dr. Benoit has jeopardized inmate health by reducing the hours of facility dentists for budgetary reasons.

II.   <u>Analysis</u>

Brown details his dental treatment beginning in 2008 and identifies many dentists who are not defendants in this case. The Court notes that Brown previously filed two federal cases concerning his dental treatment, *Brown v. Tuttle*, No. 3:13cv1444(VAB), and *Brown v. Tessler*, 3:15cv181(JBA). He settled both cases in May 2016.

The only defendants in this case are Drs. Benoit and Lichtenstein. Brown describes the involvement of the defendants in a separate section. Brown states that he has named Dr. Benoit for his role as director of the dental department for the Department of Correction. He describes his claims against Dr. Benoit as arising from Dr. Benoit's failure to ensure adequate staffing to meet the dental needs of Connecticut inmates and not properly training and supervising the dentists on staff. As a result of his mismanagement, Brown states that he, and all other inmates, have been subjected to an extraction-only policy, denial of cleanings, and unreasonable wait

1 at 64.                                        5

times for dental services. Dr. Lichtenstein is named because he was deliberately indifferent to Brown's serious dental needs. His treatment, or lack thereof, caused Brown to experience pain and tooth deterioration and prevented him from engaging in normal activities.

Brown sets forth fourteen legal claims:[2] (1) Dr. Lichtenstein provided Brown inadequate dental services in violation of the Eighth Amendment; (2) Dr. Benoit violated the Eighth Amendment by cutting the number of hours dental services were available and the number of dental staff; (3) Dr. Benoit violated the Eighth Amendment by failing to properly supervise staff even though he knew that dentists were extracting rather than restoring teeth; (5) Drs. Lichtenstein and Benoit failed to provide Brown with replacement partial dentures; (6) Dr. Benoit, in conjunction with other dentists, created the extraction-only policy; (7) Dr. Benoit violated Brown's Eighth Amendment rights by withholding partial dentures; (8) Drs. Benoit and Lichtenstein violated the Eighth Amendment by ignoring the problems created by long wait times for dental services; (9) Dr. Benoit violated the Eighth Amendment by not allowing dental staff to clean teeth, permitting long wait times for services, and allowing redress of grievances to be blocked; (10) Drs. Lichtenstein and Benoit failed to make timely referrals, provide restoration services or cleanings, and provide an appropriate avenue to seek redress of grievances; (11) Drs. Lichtenstein and Benoit retaliated against Brown by refusing to treat him after he filed a grievance; (12) Dr. Benoit failed to supervise dental procedures and policies and permitted the reduction of services for budgetary reasons; (13) Dr. Lichtenstein denied Brown pain medication; (14) Dr. Lichtenstein denied Brown his right to redress of grievances by responding

_____

[2] The legal claims are listed as Counts One through Fifteen with no Count Four.

to grievances complaining about his own conduct; (15) Dr. Benoit was aware that the current grievance procedure has not protected Brown from violation of his First Amendment rights.

A.      *Constitutional Challenge to Directive 8.9*

In Counts Fourteen and Fifteen, as well as portions of Counts Nine and Ten, Brown challenges the practice, under the Department of Correction Administrative Directive 8.9, of permitting the dentist against whom a grievance is filed, to respond to the grievance. The Court has reviewed Directive 8.9. Nowhere does the directive require that the dentist who is the subject of a complaint review that complaint. Rather, the directive provides that, when an inmate is dissatisfied with his treatment, he may request a Health Services Review of diagnosis/treatment. Upon receipt of the form, the inmate will be scheduled for an appointment with a physician, dentist or psychiatrist/psychologist. *See* Directive 8.9, Section 11, www.ct.gov/doc (last visited Jan. 19, 2017). As Brown has alleged that Dr. Lichtenstein was the only dentist at the correctional facility, he would be the person to whom Brown would be referred for the Health Services Review. In the introduction to his complaint, Brown states that he challenges the constitutionality of Directive 8.9. The Court considers any challenge to this directive to be a challenge to the directive as it was applied to Brown. To the extent Brown is asserting such a challenge to Directive 8.9 in this action, the claim is dismissed.

Although Brown has a constitutional right to redress of grievances, he has no constitutional right to effective institutional grievance procedures. *See Kalican v. Dzurenda*, 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015); *see also Overhold v. Unibase Data Entry, Inc.*, 221 F.3d 1335, 2000 WL 799760, at *3 (3d Cir. 2000) (inmates have no constitutional right to effective grievance procedures). Accordingly, Counts Fourteen and Fifteen and the claims in

7

Counts Nine and Ten relating to the institutional grievance process are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      B.    *Deliberate Indifference*

Brown contends that the defendants have been deliberately indifferent to his serious dental needs. To state a claim for deliberate indifference to a serious dental need, Brown must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 262, 279–80 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See id.* Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). But although a disagreement over treatment is not cognizable under section 1983, the treatment actually given must be adequate. *See Chance*, 143 F.3d at 703.

A claim regarding inadequate dental care may be cognizable under the Eighth Amendment. Factors the court considers to determine the seriousness of the need include pain

and an inability to engage in normal activities. *See id.* Brown has alleged that the failure to treat

his tooth decay caused him severe pain and interfered with his ability to eat. Thus, Brown has

alleged sufficient facts to demonstrate a serious dental need. Further, he alleges that the

defendants refused proper treatment and unreasonably delayed dental treatment. I conclude that

those allegations are sufficient to proceed on the dental claims against defendants Benoit and

Lichtenstein.

      C.    *Retaliation*

      Brown also includes retaliation claims. To state a claim for retaliation, Brown must allege

facts demonstrating that: (1) he was engaged in constitutionally protected activity; (2) the

defendants took adverse action against him; and (3) a causal connection between the protected

activity and the adverse action. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). To satisfy the

third element, Brown must allege that the protected activity "was a substantial or motivating

factor for the adverse action taken" against him. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.

2003) (citation omitted).

      Brown states in Claim Eleven that, after he filed his grievance, Dr. Lichtenstein and Dr.

Benoit refused to treat him; however, he alleges no facts to support that conclusion. Brown must

include sufficient facts to afford the defendants fair notice of his claim and demonstrate a

plausible right to relief. *See Twombly*, 550 U.S. at 55–56. Because Brown has alleged no facts

showing a denial of treatment and no facts suggesting that any lack of treatment is the result of

his grievance instead of the staffing and budgetary reasons he details at length, the retaliation

claim is dismissed without prejudice.

III.   <u>Conclusion</u>

Brown's claims, in Counts Nine, Ten, Fourteen and Fifteen, relating to the prison grievance procedures, any facial challenge to Directive 8.9 and the retaliation claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1). The claims for deliberate indifference to serious dental needs against Drs. Benoit and Lichtenstein, the supervisory liability claim against Dr. Benoit, and the challenge to Directive 8.4 will proceed at this time. The defendants shall respond to the complaint in accordance with the schedule below.

It is hereby ordered that:

(1)   **The Clerk shall** verify the current work addresses for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each defendant at the confirmed address within **twenty-one days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him or her in individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)   **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the amended complaint on the Dr. Benoit in his official capacity at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)      **The Clerk shall** send written notice to Brown of the status of this action, along with a copy of this Order.

(4)      **The Clerk shall** send a courtesy copy of the Complaint with attached exhibits and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)      The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)      All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)      Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)      If the Brown changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Brown must give notice of a new address even if he is, or becomes, incarcerated. Brown should write PLEASE NOTE MY NEW ADDRESS on the

notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Brown has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Brown should also notify the defendant or the attorney for the defendant of his new address.

(10)    Brown shall utilize the Prisoner Efiling Program when filing documents in this case.

**SO ORDERED** this 24th day of January 2017 at Bridgeport, Connecticut.

 /s/ Stefan R. Underhill                          
Stefan R. Underhill
United States District Judge